NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| UNITED STATES, | : | |
| Plaintiff, | : | |
|  | : | Cr. A. No. 07-232 (SRC) |
| v. | : | |
|  | : | **OPINION** |
| ALIF BASS, | : | |
| Defendant. | : | |

**Chesler, U.S.D.J.**

This matter comes before the Court on the motion of Defendant, Alif Bass, to suppress evidence obtained in the search of a Jeep Cherokee on May 21, 2006 and evidence obtained in the course of a subsequent search of a Jeep Cherokee on August 22, 2006. The Court, however, finds that Defendant lacks standing to challenge the searches of the Jeep. Therefore, as discussed more fully below, Defendant's motion to suppress the evidence seized in those searches is denied.

**I. Background**

Defendant first filed this motion as part of an omnibus motion on October 17, 2007. (Docket item 18). The government submitted opposition, (docket item 22), and Defendant subsequently filed a supplemental letter brief in further support of his motion (docket item 26).

On November 14, 2005, the Court heard oral argument and directed the parties to submit supplemental briefs in support of and in opposition to Defendant's instant motion to suppress evidence recovered from a 2001 Jeep Cherokee on May 21, 2006 and on August 21, 2006.  Only the government has provided a supplemental brief and the Court now decides this motion on the papers pursuant to Federal Rule of Civil Procedure 78.

According to Defendant, on May 21, 2006, at approximately 10:15 pm, Defendant was standing with a group of "five or more" individuals "playing dice" in front of a building located at 148 South 13th Street, near Central Avenue in Newark, New Jersey.  (Sworn Statement of Defendant, dated October 18, 2007 ("Df. St. I") at 1-2).  At or about that time, several plain clothed police officers approached the group, at which time some of the individuals that had been standing with Defendant "walked away," but Defendant and at least one other person remained. (*Id*. at 1).

Defendant contends that one of the officers picked up a set of car keys that were on the ground and used the keys to open and search a brown Jeep.  (*Id*. at 1-2).  In support of this motion, Defendant submitted a sworn statement in which he stated the keys belonged to "one of the guys that scattered" when the officers arrived.  (*Id*. at 4).  According to Defendant, he was neither driving the Jeep, nor was it registered in his name.  (*Id*.)  He further asserts that the officers also obtained, from another individual that had remained when the officers arrived, keys to a white BMW, which the officers also searched.  (*Id*. at 2).

Approximately three months later, Defendant again encountered police officers. According to Defendant, on August 21, 2006, at approximately 1:15 pm, Defendant walked out of his house and sat in the passenger seat of a white BMW.  (Sworn Statement of Defendant, dated October 19, 2007 ("Df. St.  II") at 1-2).  Defendant's friend, Jarriff Harper, was also in the

vehicle waiting for a tow truck to arrive, and about thirty minutes after Defendant entered the vehicle, the men were temporarily joined by Defendant's friend Murad. (Id. at 2). Shortly after Murad left, an unmarked police vehicle pulled up alongside the white BMW and the officers looked into the car. (*Id.*) Defendant reports that after two additional police vehicles appeared, the officers removed Defendant and Harper from the BMW, searched and handcuffed both men, and then searched the white BMW. (*Id*. at 2-3). According to Defendant, the officers removed money from the BMW, then, after completing the search of the BMW, the officers placed Defendant and Harper in an unmarked police van, and then two officers disappeared from Defendant's sight. (*Id.*)

In the "Defendant's Proposed Counter-Statement of Facts" included in the first Memorandum filed in support of this motion, Defendant asserts that after the search of the BMW, "[a]n officer with braids in his hair and a white officer went down the street [and searched] Mr. Bass' car, which was a Jeep Cherokee." (Df. Br. at 3). There is no citation for this statement and the memorandum is not supported by a sworn statement or affidavit. (*Id.*) However, in Defendant's sworn statement, submitted with his supplemental letter brief in support of this motion regarding the August 22, 2006 search, Defendant indicated that he did not walk out to a Jeep that was parked near his house and, that he did not see the police officers search a Jeep. (Df. St. II at 3, 5). When asked if he owned a Jeep, Defendant responded "No, never." (Df. St. II at 3).

## II. Discussion

As a general rule, the burden of proof is on the defendant who seeks to suppress evidence. *U.S. v. Johnson*, 63 F. 3d 242, 245 (3d Cir. 1995) (citing *U.S. v. Acosta*, 965 F.2d 1248, 1256 n.

9 (3d Cir.1992)).  The defendant must not only prove that a search is illegal, but must also demonstrate that he has standing to challenge the legality of the search.  *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980); *Rakas v. Illinois*, 439 U.S. 128, 130 n. 1 (1978);  *Acosta*, 956 F. 2d at 1252.   To prove standing, a defendant must demonstrate that he had a legitimate expectation of privacy in the property subject to the search or the items seized by showing an actual or subjective expectation of privacy that society is prepared to recognize.  *Minnesota v. Olson,* 495 U.S. 91,  95 (1990).

It has long been held that "Fourth Amendment rights are personal rights which, like some other constitutional rights may not be vicariously asserted."  *Brown v. United States*, 411 U.S. 223, 229 (1973).  It is "beyond any doubt that the interest in deterring illegal searches does not justify the exclusion of tainted evidence at the instance of a party who was not the victim of the challenged practices," federal courts may not "suppress otherwise admissible evidence on the ground that it was seized unlawfully from a third party not before the court."  *U.S. v. Payner*, 447 U.S. 727, 735 (1980) (citing *Rakas*, 439 U.S. at 137;  *Alderman v. U.S.*, 394 U.S. 165 , 174-175 (1969)).  Stated another way, the "'capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place.' "  *U.S. v. Perez*, 280 F.3d 318, 337 (3d Cir. 2002) (quoting *U.S. v. Miller*, 525 U.S. 83, 88 (1998)).

In this case, Defendant has sworn that he has "never" owned a Jeep.  Defendant has further sworn that he was not driving the Jeep from which items were seized on May 21, 2006, nor did he walk out to the Jeep that was parked outside of his house and from which items were seized on August 21, 2006.  In short, Defendant has sworn that he did not own or control the Jeep that he contends the police illegally searched, and Defendant does not assert that he was a

passenger of the Jeep at or around the time of either search.  As Defendant has not demonstrated that he had any expectation of privacy in the Jeep, he does not have standing to challenge the legality of the two searches that occurred on  May 21, 2006 and August 21, 2006.  Accordingly, Defendant's motion to suppress evidence seized in the two searches is denied.

                                                             s/ Stanley R. Chesler  
                                                           Stanley R. Chesler, U.S.D.J.

DATED: December 12, 2007